FINCH *v.* FORD MOTOR COMPANY.

1. WORKMEN'S COMPENSATION—FINDING OF COMMISSION—FOUNDRY WORKER'S INJURY—PNEUMOCONIOSIS—EVIDENCE.

In foundry worker's proceeding to recover workmen's compensation, finding of compensation commission that plaintiff received a personal injury arising out of and in the course of his employment *held,* fully substantiated by evidence showing affliction with pneumoconiosis.

2. SAME—TOTAL DISABILITY—EVIDENCE—TEST OF DISABILITY.

Finding of fact that plaintiff foundry worker was suffering from pneumoconiosis resulting in total disability within the meaning of the occupational disease amendment of the workmen's compensation act *held,* sustained by evidence, it being unnecessary to show the employee was disabled from performing any work but merely that he was disabled from earning full wages at the work in which he was last subjected to the conditions resulting in the disability (Act No. 10, pt. 7, §§ 1, 4, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 245, Pub. Acts 1943).

3. SAME—EXTENT OF DISABILITY—QUESTION OF FACT.

The extent of an employee's disablement under the occupational disease amendment to the workmen's compensation act is a question of fact and, where the finding thereon by the compensation commission is supported by the record, it is final (Act No. 10, pt. 7, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 58 Am. Jur., Workmen's Compensation, § 450.
[3] 58 Am. Jur., Workmen's Compensation, § 283.
[3] What amounts to total incapacity within Workmen's Compensation Act. 67 A.L.R. 785, 806; 98 A.L.R. 729.
[4] 58 Am. Jur., Workmen's Compensation, §§ 214, 246, 380.
[4, 5] Workmen's compensation: When prescriptive period begins to run in case of occupational or industrial disease. 86 A.L.R. 572.
[5] 58 Am. Jur., Workmen's Compensation, § 214.
[6] 58 Am. Jur., Workmen's Compensation, § 534.

4. SAME—OCCUPATIONAL DISEASE—NOTICE OF DISABLEMENT—TIME.
An occupational disease is "contracted" under the workmen's compensation act when symptoms appear, hence where foundry worker gave notice of his having contracted pneumoconiosis within 120 days after discovery thereof, such notice was timely notwithstanding it was 14 months after discharge by defendant (Act No. 10, pt. 7, § 10, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

5. SAME—FINDING AS TO DISABLEMENT.
Where foundry worker does not complain that the compensation commission erred in fixing date of disablement as the day following his discharge by defendant (August 2, 1945), rather than date when plaintiff discovered he had pneumoconiosis (September, 1946), and defendant is not harmed by such finding in that the extent of its liability to plaintiff was decreased by such finding, defendant cannot complain (Act No. 10, pt. 7, § 4, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 245, Pub. Acts 1943, and by Act No. 318, Pub. Acts 1945).

6. SAME—PNEUMOCONIOSIS—LIMITATION AS TO LIABILITY—QUESTIONS REVIEWABLE—CROSS APPEAL.
Whether or not compensation commission erred in limiting recovery of workmen's compensation to $2,375 for total disability due to pneumoconiosis where date of disablement was found to have been August 2, 1945, although plaintiff did not give notice to defendant that he had such disease until October 1, 1946, after he learned of it the previous month is not determined where plaintiff did not cross-appeal nor raise the point in his appeal to the commission (Act No. 10, pt. 7, § 4, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 245, Pub. Acts 1943, and by Act No. 318, Pub. Acts 1945).

Appeal from Department of Labor and Industry. Submitted April 7, 1948. (Docket No. 22, Calendar No. 43,912.) Decided June 14, 1948.

William Finch presented his claim for compensation against Ford Motor Company, employer, for disability due to occupational disease. Award to plaintiff. Defendant appeals. Affirmed.

*Dann, Atlas & Tilchin,* for plaintiff.

*William T. Gossett (E. C. Starkey* and *F. A. Lux,* of counsel), for defendant.

BUTZEL, J. Plaintiff worked continuously in the foundry department of the Ford Motor Company from 1931 to 1945, during which period he was subjected at various times to smoke, fumes and dust. He worked at various jobs, all of which the employer classifies as common labor, including removing hot steel castings from a furnace, chipping castings with an air hammer, cleaning out soaking pits, cleaning out open hearth furnaces, grinding castings on an emery wheel, and working on an operation called "shakeout" in which he had to remove sand and slag from crankshaft castings. At times plaintiff became sick and found it difficult to continue his work. On two occasions he went to Hot Springs, Arkansas, for mineral-bath treatments upon the advice of his physician, who had diagnosed his ailment as rheumatic arthritis. His deteriorating physical condition was apparently never attributed to the pneumoconiosis which it was later discovered he had contracted.

Considerable animosity had arisen between plaintiff and his foreman, and serious altercations ensued. On one occasion plaintiff refused to do work assigned to him on the ground that his back hurt him. He was sent to the medical department and it was recommended that he be assigned to moderate work for two weeks. He was also charged with serious violations of various company rules. He was discharged on August 1, 1945, for having struck the foreman in the course of an argument over his refusal to do work which he states he did not feel physically able to do. Defendant company had good reason to feel not at all friendly toward plaintiff, and

it has vigorously contested his claim for compensation.

Between August 1, 1945, and August 13, 1946, plaintiff was unemployed. He stated in his testimony that he did not seek work during that period because he was not feeling well. On the latter date he applied for and obtained work at another automobile factory as a common laborer in its crankshaft department. He was given a physical examination when he entered his new employment, and a chest X-ray taken at that time disclosed that he was afflicted with pneumoconiosis. For that reason his new employer discharged him on September 18, 1946. As far as the record shows, plaintiff had had no difficulty in doing the work assigned to him during this short period of employment.

On October 1, 1946, plaintiff served notice of injury and claim for compensation upon defendant, and on October 4, filed his application for hearing and adjustment of claim. Hearing was had before a deputy commissioner of the compensation commission, and on December 4, 1946, an award was entered stating that plaintiff had received a personal injury arising out of and in the course of his employment by defendant on or about August 1, 1945, that his weekly wage was $50, and his occupation was common laborer, and that he was entitled to receive compensation at $21 per week for total disability from August 2, 1945, less the period of five weeks when he worked for another employer. It further stated that plaintiff was still totally disabled and entitled to receive compensation at the rate of $21 per week until the further order of the commission, but in an amount not to exceed the aggregate sum of $2,375. Upon appeal the award was affirmed by the compensation commission of the department of labor and industry. Leave to appeal was granted by this Court.

Defendant does not question the finding that plaintiff received a personal injury arising out of and in the course of his employment by it. The record fully substantiates such finding. Defendant contends, however, that the compensation commission erred as a matter of law in holding that plaintiff is suffering a compensable disability, that plaintiff is at most only partially disabled from a dust disease and the workmen's compensation act does not provide for compensation for such disability, and that defendant did not have notice or knowledge of the alleged injury within the statutory period, and the claim was not timely made.

Defendant argues that there is not sufficient evidence in the case to establish the fact that plaintiff has a compensable disability. It points to the medical testimony to the effect that plaintiff's pneumoconiotic condition is not of a disabling nature inasmuch as plaintiff can do work in a dustless environment. However, even defendant's medical expert stated, when asked whether plaintiff had a disability in the field of common labor on jobs where he would not be exposed to dust:

"Well, there is one thing he can't do. That is, if they have to do heavy lifting or rapid motion. Of course, this man weighs 232 pounds, and a man weighing that much hasn't got 100 per cent. breathing capacity. That is true of any heavyweight."

The record further shows that plaintiff was discharged by his last employer because of his pneumoconiosis even though he was not exposed to a dust hazard in his job and had performed his work well. Plaintiff testified as to pains he had, spitting up of blood, et cetera. There was testimony to uphold the finding of the commission as to the fact of disability, and, for this reason, we must affirm it.

Defendant stresses the case of *Gathard* v. *Campbell, Wyant & Cannon Foundry Co.*, 320 Mich. 180,

where we upheld an award of the commission denying claimant compensation. She was sensitive to soluble oils used in the machine shop where she worked at common labor. The facts were radically different from those in the instant case, and we upheld the commission's findings. The instant case follows more nearly *Flanigan* v. *Reo Motors, Inc.*, 300 Mich. 359; *Stewart* v. *Lakey Foundry & Machine Co.*, 311 Mich. 463; *Thomas* v. *Continental Motors Corp.*, 315 Mich. 27; and *Gerlesits* v. *Lakey Foundry & Machine Co.*, 319 Mich. 229.

The next question raised is whether the commission erred in granting compensation for a dust disease where, defendant contends, plaintiff was only partially disabled. The act provides, part 7, § 4:[*]

"Compensation shall not be payable for partial disability due to silicosis or other dust disease."

We believe that the commission was correct in holding that plaintiff was totally disabled. Section 1 of part 7 of the act, as amended in 1943,[†] defines "disability" to mean "the state of being disabled from earning full wages at the work in which the employee was last subjected to the conditions resulting in disability." We feel that plaintiff is disabled within the meaning of this definition. In *Stewart* v. *Lakey Foundry & Machine Co., supra,* we held that it was not necessary that a claimant be totally disabled from performing any work, but that the test was whether he was able to earn full wages at the work at which he was employed when last subjected to the conditions resulting in disability. To like effect see *Thomas* v. *Continental Motors Corp., supra,* and *Syrjala* v. *Castile Mining Co.,* 316

---

* Part 7 was added to Act No. 10, Pub. Acts 1912 (1st Ex. Sess.), by Act No. 61, Pub. Acts 1937. See Comp. Laws Supp. 1940, 1945, § 8485-1 *et seq.,* Stat. Ann. 1947 Cum. Supp. § 17.220 *et seq.*—REPORTER.

† Act No. 245, Pub. Acts 1943.—REPORTER.

Mich. 125. In the instant case, the fact that plaintiff did try to get work with another employer along the same line that he was accustomed to, and lost his job because of his pneumoconiosis shows that he is more than partially disabled. Again, the extent of his disablement was a question of fact, and the finding of the commission is supported by the record.

Section 10 of part 7 of the act provides:

"The requirements as to notice as to occupational disease and death resulting therefrom and the requirements as to the bringing of proceedings for compensation for disability or death resulting from such occupational disease shall be the same as required in section fifteen of part two of this act, *except that the notice shall be given to the employer within one hundred twenty days after the disablement.*"

Defendant had notice of plaintiff's claim within 120 days after plaintiff found out about his condition. It was impossible for plaintiff to give notice before that time of a condition about which he had no knowledge. Many diseases, and particularly pneumoconiosis, often follow an insidious course and may not be discoverable until a long time after it is contracted.

Under section 5 of part 7 of the act, as it stood before amendment by Act No. 245, Pub. Acts 1943, compensation for occupational diseases was payable only when such disease was contracted within 12 months previous to the date of disablement. In *Krzewinski* v. *Robert Gage Coal Co.,* 304 Mich. 63, we held that an occupational disease is contracted when symptoms appear. We said at page 67:

"We are of the opinion that in order that the statute may be effective and purposeful, it must be construed as providing that the date of contracting starts when symptoms appear. Otherwise, since it takes so long for the deposits to build up so that

symptoms appear, the section of the statute requiring that contracting of the disease must come within one year of the disablement would, in an effective or practical sense, take away all the benefit of the section making the disease compensable."

The same reasoning may be applied in the instant case. If we were to hold that notice must be given at a time when the injured employee had no knowledge, or reason to have knowledge, of the existent diseased condition, then we will be effectively denying him the benefit of the statute. We are of the opinion that what the legislature meant when it prescribed that notice of an occupational disease must be given to the employer within 120 days after the disablement was that notice must be given within such time after the injured employee has knowledge or reasonable ground for knowledge of his disability. The plaintiff gave such timely notice herein.

We shall not consider the question whether or not the commission was correct in fixing August 2, 1945, as the date of disablement. If it had set a later date, *i. e.,* the date when plaintiff first discovered he had pneumoconiosis as the date of disablement, there would have been no question as to the timeliness of plaintiff's notice of injury and claim. There should be no question but that August 1, 1945, was the "date of injury" in the instant case as such term is defined in section 1 of part 2 of the act, but there is a question in our minds as to whether or not August 2, 1945, was the date of disablement. However, plaintiff does not contend that the commission erred in fixing the date of disablement, and defendant was not harmed by such finding in that the extent of its liability is decreased by this finding under section 4 of part 7 of the act. If there was error in such determination it operates in favor of defendant, and under the circumstances, it cannot complain.

Defendant cites the case of *Gower* v. *Department of Conservation,* 317 Mich. 333. This case is distinguishable from the instant one in that therein the issue was whether or not the required notice had been given, and not when such notice must be given. Also, on page 343, we said:

"In the case at bar, plaintiffs seek compensation upon the theory of a personal injury to deceased, hence we do not find it necessary to discuss cases growing out of occupational diseases."

The instant case involves an occupational disease. Plaintiff raises the question whether or not the commission erred in limiting his recovery to the aggregate sum of $2,375. It is his contention that if his condition is attributable to accidental causes or to his having worked as a grinder while in defendant's employ, his recovery should not be limited by the provisions of section 4 of part 7 of the act, as amended by Act No. 245, Pub. Acts 1943, and Act No. 318, Pub. Acts 1945, because pneumoconiosis was compensable in such cases under the law as it existed prior to such amendments. Even if there were any merit in plaintiff's argument that his condition is due to causes which would have made his disability compensable under the act as it existed before amendment in 1943, he has not cross-appealed, nor did he raise the point in the appeal to the compensation commission.

The award is affirmed, with costs to plaintiff.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, DETHMERS, and CARR, JJ., concurred.