BROWN v REVERE COPPER AND BRASS CORPORATION

1. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASE—DISABILITY—NOTICE—STATUTES.

   The statutory 120-day period for a workmen's compensation claimant to give notice to his employer of his claim for an occupational disease starts at the time the claimant has knowledge or reason to know of his disability (MCLA 417.10).

2. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASE—WORK RELATIONSHIP—NOTICE—STATUTES.

   The date of commencement of the statutory 120-day period within which a workman must file his claim for disability caused by an occupational disease may, in a proper factual setting, be the date on which he is medically informed of the work relationship of his disability, and is not necessarily the date on which he becomes aware of the disability itself or the last day worked for the employer (MCLA 417.10).

3. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASE—DISABILITY—NOTICE—QUESTION OF FACT.

   Whether a workmen's compensation claimant has given notice of disablement to his employer within the statutory 120-day notice period is a question of fact for the Workmen's Compensation Appeal Board (MCLA 417.10).

4. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASE—PREMATURE CLAIM—NOTICE.

   Notice to a workman's employer of a claim for occupational disease, given before the claimant knows or has reason to know of the nature of his diseased condition as work-related from physical examination and medical diagnosis, may be deemed timely even though prematurely filed and based on speculation as to the nature of the disability where it accurately reflects the claimant's condition as involving his chest, throat, and lungs, and accomplishes the objective of allowing the employer

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 58 Am Jur, Workmen's Compensation §§ 380, 409.
When limitation period begins to run against cause of action or claim for contracting of disease, 11 ALR2d 277.

the opportunity for investigation into the claimed disability while the facts are accessible (MCLA 467.10).

Appeal from Workmen's Compensation Appeal Board. Submitted Division 1 April 13, 1972, at Detroit. (Docket No. 12226.) Decided July 25, 1972.

William Brown presented his claim for workmen's compensation against Revere Copper and Brass Corporation. The Workmen's Compensation Appeal Board reversed referee's award of benefits. Plaintiff appeals. Reversed and remanded with instructions.

*Rothe, Marston, Mazey, Sachs, O'Connell, Nunn & Freid, P. C.* (by *A. Donald Kadushin*), for plaintiff.

*Clark, Klein, Winter, Parson & Prewitt* (by *David P. Wood*), for defendant.

*Amici Curiae:*

*Rothe, Marston, Mazey, Sachs, O'Connell, Nunn & Freid, P. C.,* for Michigan State AFL-CIO.

*Stephen I. Schlossberg,* General Counsel for International Union, UAW.

Before: FITZGERALD, P. J., and McGREGOR and O'HARA,* JJ.

FITZGERALD, P. J. This case involves an appeal by plaintiff-employee from a determination of the Workmen's Compensation Appeal Board of June 18, 1971.[1] By that determination the appeal board

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] This Court granted leave to appeal on August 27, 1971.

reversed the decision of the hearing referee granting compensation benefits to plaintiff. William Brown, plaintiff herein, was employed by defendant Revere Copper and Brass Corporation for 38 years, until his retirement on June 18, 1965, at the age of 66. On November 2, 1965, 137 days after his retirement, plaintiff Brown filed with the Workmen's Compensation Department an application for hearing and adjustment of claim. By said claim, plaintiff set forth that a disablement from occupational disease occurred on or about June 18, 1965; that the disablement occurred at Detroit, Michigan, by "[e]xposure to dust, smoke, fumes and related irritants"; and that the nature of the disability encompassed "[c]hest, throat, lungs, emphysema, pneumoconiosis, silicosis and related conditions". Following hearings before the referee on July 15, 1968 and August 12, 1968, he rendered a decision on August 23, 1968, that plaintiff's total disability was due 50% to industrial exposure and 50% to the natural conditions of life; he therefore ordered that the defendant-employer pay plaintiff the sum of $16.50 per week up to a maximum of $5,250.

The ruling of the hearing referee was appealed to the appeal board by both parties. Plaintiff filed his application for hearing and adjustment of claim more than 120 days after his retirement on June 18, 1965. The appeal board ruled that said claim did not constitute timely notice to defendant-employer. The correctness of the board's ruling constitutes the basic issue to be considered on this

appeal.[2] The appeal board, in its opinion reversing the hearing referee's determination, stated, in pertinent part, the following:

"Defendants also assert that plaintiff failed to give timely notice of any personal injury as required by the Michigan Workmen's Compensation Act.

\* \* \*

"We will consider first the matter of notice for the Legislature placed a direct and unavoidable statutory limitation on employees with regard to filing of notice.

"This writer traveled a lonely road in the case of *Walters v Midwest Foundry Co,* 1970 WCABO 725, wherein I interpreted *Finch v Ford Motor Co,* 321 Mich 469, as requiring the employee to give notice after discovery of the *condition* causing disablement. Thus, I reasoned, 'The employee knowing of his condition is given 120 days to serve notice on the employer in which he alleges his disabling condition was caused by employment. Such notice subsequently protects the employee's right to compensation if his proofs establish that his condition was caused by employment.'

"However my associates, in the controlling opinion *(Walters v Midwest Foundry Co)* interpreted *Finch v Ford Motor Co* as providing 120 days 'after the employee has knowledge of *the cause* of his disablement'. *(Walters, supra,* p 716.)

"Applying the latter interpretation of *Finch, supra,* to the facts at hand leaves plaintiff's claim in jeopardy for

---

[2] MCLA 417.10; MSA 17.229, provides the following in regard to giving of notice to an employer:

"The requirements as to notice as to occupational disease and death resulting therefrom and the requirements as to the bringing of proceedings for compensation for disability or death resulting from such occupational disease shall be the same as required in section 15 of part 2 of this act, except that *the notice shall be given to the employer within 120 days after the disablement.*" (Emphasis supplied.)

MCLA 418.401, MSA 17.237(401) provides in part:

"(a) 'Disability' means the state of being disabled from earning full wages at the work in which the employee was last subject to the conditions resulting in disability.

"(b) 'Disablement' means the event of becoming so disabled."

failure to give the required notice to the employer as required by Part VII, § 10 of the Act.

\* \* \*

"The plaintiff who alleges disablement on his last day worked had knowledge of *the cause* of such disability and in fact related it, by his own testimony, to his work several years prior to the date of retirement. The relevant testimony follows:

" 'Q. *(By Mr. Kadushin):* Did there come a time when you noticed any physical problems?

" 'A. I had a cough, and my breath was getting short.

" 'Q. When did you first notice the coughing and shortness of breath, how long ago?

" 'A. Oh, around about 10 or 11 years ago.

" 'Q. Now, as you worked on at Revere Copper & Brass until June 18, 1965, when you left, did this condition or these problems that you noticed, this coughing and shortness of breath, did it get better, stay the same or get worse?

" 'A. It didn't get no better; got worse.

" 'Q. Got worse?

" 'A. Yes.

\* \* \*

" 'Q. Now, before you saw Mr. Moore or Mr. O'Connell, did you have any idea that your coughing and shortness of breath came from the job or could have come from the job?

" 'A. Well, I knew I worked in that copper. I knew my breath was short.

" 'Q. Well, when did you know that it might have come from the job?

" 'A. Well, I'd say around about, about 10 or 11 years ago.'

"The first notice that defendant had, that plaintiff who had asked for retirement under the pension plan sought to be adjudged out of employment due to an alleged occupational injury, came when the claim of plaintiff was mailed by the Workmen's Compensation Department. *Such notice to the employer mailed November 2, 1965, was more than 120 days after June 18, 1965.*" (Emphasis supplied.)

Both parties agree that the date of plaintiff's disablement was June 18, 1965, and that, as measured from that date, the notice to plaintiff's employer of his claim for benefits was filed 17 days late. It is to be further noted that as set forth in *Thomas v Griffin Wheel Co,* 8 Mich App 35, 48 (1967), the 120-day notice requirement may not be abrogated on the ground that no prejudice resulted from the claimant's failure to notify the employer; the requirement of timely notice being a condition precedent to the right to maintain an action under the workmen's compensation act. The record in the instant case reveals that plaintiff, at a physical examination had on February 15, 1966, was diagnosed to be suffering from chronic bronchitis, pulmonary emphysema, possible pulmonary fibrosis and arteriosclerotic heart disease by history. Thus, it appears that on that date, which was subsequent to the date upon which plaintiff filed notice of his claim for benefits, November 2, 1965, he knew the precise medical diagnosis of his disability. The record does not reveal that plaintiff obtained any medical diagnosis, and consequent knowledge of his *disability* prior to the date of his filing the application for hearing and adjustment of claim on November 2, 1965; nor does it reveal the basis upon which plaintiff, on that date, was able to set forth in the application and notice of claim the nature of his disability as being "[c]hest, throat, lungs, emphysema, pneumoconiosis, silicosis and related conditions".

Plaintiff claims that the Workmen's Compensation Appeal Board committed error in interpreting *Finch v Ford Motor Co,* 321 Mich 469 (1948), to require that a claimant under the workmen's compensation act give notice within 120 days "after the employee has knowledge of *the cause* of his

disablement". He contends that the *Finch* case, *supra,* is authority for the proposition that the claimant must know, or have reason to know, of the *disability* itself, and that the 120-day period for giving notice to the employer is to be measured from that time. Plaintiff further argues that, pursuant to *Finch,* the claimant is *not* bound to give notice within 120 days of his disablement unless he has knowledge of his *disability* at that time; that is the 120-day period begins to run, *not at the time of disablement, but at the time claimant gains knowledge of his disability.* The *Finch* case, when fairly construed, supports the contentions urged by plaintiff upon this Court and fails to reveal an interpretation of the notice requirement attributed to it by the appeal board in the instant case. *Finch* states in pertinent part as follows, pp 475–476:

"Defendant had notice of plaintiff's claim within 120 days after plaintiff found out about his condition. It was impossible for plaintiff to give notice before that time of a condition about which he had no knowledge. Many diseases, and particularly pneumoconiosis, often follow an insidious course and may not be discoverable until a long time after it is contracted.

"Under section 5 of part 7 of the act, as it stood before amendment by Act No 245, Pub Acts 1943, compensation for occupational diseases was payable only when such disease was contracted within 12 months previous to the date of disablement. In *Krzewinski v Robert Gage Coal Co,* 304 Mich 63 (1942), we held that an occupational disease is contracted when symptoms appear. We said at page 67:

" 'We are of the opinion that in order that the statute may be effective and purposeful, it must be construed as providing that the date of contracting starts when symptoms appear. Otherwise, since it takes so long for the deposits to build up so that symptoms appear, the section of the statute requiring that contracting of the

disease must come within one year of the disablement would, in an effective or practical sense, take away all the benefit of the section making the disease compensable.'

"The same reasoning may be applied in the instant case. If we were to hold that notice must be given at a time when the injured employee had no knowledge, or reason to have knowledge, of the existent diseased condition, then we will be effectively denying him the benefit of the statute. We are of the opinion that what the legislature meant when it prescribed that notice of an occupational disease must be given to the employer within 120 days after the disablement was that notice must be given within such time after the injured employee *has knowledge or reasonable ground for knowledge of his disability.* The plaintiff gave such timely notice herein." (Emphasis supplied.)

Thus, in *Finch,* as in *Jordon v Michigan Malleable Iron Co,* 363 Mich 256 (1961), the claimant, having filed notice of claim after acquiring knowledge of the *disease,* was held to have filed said notice within the statutory period. Likewise, in *Bacon v Penn-Dixie Corp,* 35 Mich App 69, 73 (1971), this Court stated:

"The date of injury or the date a claimant learns he is suffering from a disease is the date the statutory period begins to run. *Joslin v Campbell, Wyant & Cannon Foundry Co,* 359 Mich 420 (1960). The claimant has a duty to give notice at this time, not when he learns the injury could possibly be work-related."

We think it not untoward to point out at this time that the occupational disease statute here involved, in its literal wording, presents problems not involved in industrial accident cases.

An injured workman is painfully aware of the time at which a traumatic industrial injury is sustained. Often he has no way of knowing what the date of his disability from an occupational

disease is and hence, when his 120-day period within which to make claim begins to run. Certainly there is nothing sacred about the "last day worked" date. He may very well know he can't work any longer, but whether his disability is work-related is quite another matter. Realistically, he may not know it at all until someone medically qualified apprises him of work-related casualty. Witness the case at bar. One specialist opined that the disabling conditions were simply the attrition of advancing age. Another, equally qualified, attributed his condition to work-related exposure. The referee found 50% of the disability to be the result of his working conditions, the other 50% to be the result of natural causes.

It would indeed take a sophisticated workman to determine, at some given time before medical consultation, or by the exercise of due diligence, which was which. It is for this reason that we hold that in a proper factual setting, the date of commencement of the 120-day period within which the workman has to file his claim may well be the date on which he is medically informed of the work relationship of his disability. We think in proper cases the Appeal Board may make or affirm such date as controlling.

The question of whether a workmen's compensation claimant has given notice of disablement to his employer within the 120-day notice period required by statute is a question of fact to be determined by the Workmen's Compensation Appeal Board. *Denton v Angell Construction Co,* 1 Mich App 669, 672 (1965).

This Court is constrained to remand this case to the Workmen's Compensation Appeal Board. Upon remand, the board is instructed to determine whether plaintiff-employee knew or had reason to

know of his disability—that is, of the nature of his diseased condition—within 120 days prior to November 2, 1965, the date upon which notice of claim was given to defendant-employer. In the event that the board finds affirmatively in regard to the foregoing, notice may be deemed to have been timely filed by plaintiff pursuant to MCLA 417.10; MSA 17.229, footnote 2 of this opinion, and this Court's interpretation of *Finch v Ford Motor Co, supra.* However, should the board, upon remand, find that plaintiff knew or had reason to know of his diseased condition more than 120 days prior to the filing of notice on November 2, 1965, said notice is to be deemed to have been untimely and therefore jurisdictionally defective. *Podkastelnea v Michigan C R Co,* 198 Mich 321, 327 (1917); *Thomas v Griffin Wheel Co, supra,* p 48.

We further instruct the board that in the event it finds that plaintiff-employee did not know nor have reason to know of his diseased condition until on or about February 15, 1966, the date of his physical examination and medical diagnosis of record, the notice to defendant-employer, filed on November 2, 1965, while premature, may be deemed to have been timely. The notice to defendant-employer as to the nature of plaintiff's disability, while perhaps based on speculation as to the nature of disability, did accurately reflect plaintiff's condition as involving his chest, throat, and lungs. The notice as given accomplished its objective of allowing the employer the opportunity for investigation into the claimed disability while the facts were accessible. *Mauch v Bennett & Brown Lumber Co,* 235 Mich 496, 499 (1926); *Podkastelnea v Michigan C R Co, supra,* p 325. Premature filing of notice, if such is determined to have been the case in the instant case, may be considered to

have operated in favor of defendant-employer, and, of such untimely filing, it could not complain.

Reversed and remanded to the Workmen's Compensation Appeal Board for further proceedings consistent with this opinion. Costs to abide outcome.

All concurred.