LEWIS v CHRYSLER CORPORATION

OPINION OF THE COURT

1. WORKMEN'S COMPENSATION—EVIDENCE—BURDEN OF PROOF—COM
PENSABLE INJURY—NOTICE—STATUTE.

The burden in a case for workmen's compensation benefits is
upon the plaintiff to show the happening of an accidental
injury arising out of and in the course of his employment, and
further the burden is upon the plaintiff to show that the
defendant employer had notice or knowledge thereof within the
statutory period; it is not enough that within the statutory
period the employer has knowledge that during his hours of
employment the employee has become ill or even that he has
suffered an injury which was not compensable (MCLA 418.381).

2. WORKMEN'S COMPENSATION—COMPENSABLE INJURY—NOTICE—QUES
TION OF FACT.

Determination of whether defendant had notice of a compensable
injury is a question of fact for the Workmen's Compensation
Appeal Board.

3. WORKMEN'S COMPENSATION—COMPENSABLE INJURY—NOTICE.

A plaintiff's application for group health insurance benefits which
provide compensation for non-work-related injuries, is not tantamount to providing notice of a compensable work-related
injury to his employer.

4. WORKMEN'S COMPENSATION—COMPENSABLE INJURY—NOTICE.

It is not incumbent upon an employer to inquire as to whether a
plaintiff's injury was of a work-related nature; therefore, the
employer's knowledge of a plaintiff's amputation and resulting

REFERENCES FOR POINTS IN HEADNOTES
[1, 8] 58 Am Jur, Workmen's Compensation §§ 386, 436.
[2, 9] 58 Am Jur, Workmen's Compensation §§ 383, 461.
[3, 4] 58 Am Jur, Workmen's Compensation § 375 *et seq.*
[5] 58 Am Jur, Workmen's Compensation § 380.
[6] 58 Am Jur, Workmen's Compensation §§ 244, 245.
[7] 58 Am Jur, Workmen's Compensation §§ 380, 409.
[9] 58 Am Jur, Workmen's Compensation § 530.

disability does not constitute sufficient notice in the absence of communication to the employer that the injury arose out of and in the course of employment.

5. WORKMEN'S COMPENSATION—COMPENSABLE INJURY—NOTICE.

A plaintiff whose leg was amputated had knowledge of his incapacity at the time the amputation was performed and it was at this time that the plaintiff had a duty to notify his employer of the claim and not one year later when his attorney suggested that the injury might be considered work-related.

6. WORKMEN'S COMPENSATION—AMPUTATION—INDUSTRIAL INJURY—OCCUPATIONAL DISEASE.

A traumatic amputation of a plaintiff's leg falls within the category of an industrial injury rather than an occupational disease.

7. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASE—NOTICE.

Commencement of the notice period for an occupational disease in a workmen's compensation claim occurs when a plaintiff is medically informed of the work relationship of his disability.

8. WORKMEN'S COMPENSATION—BURDEN OF PROOF—NOTICE.

The Workmen's Compensation Appeal Board improperly placed the burden upon an employer of proving that a work-related injury occurred where the findings of the board failed to indicate any evidence to support its conclusion that the employer had notice of a work-related injury suffered by the workman and where the board concedes that the workman's claim for sickness and accident benefits was not the proper vehicle to utilize to give notice that a compensable injury was suffered, yet attributed knowledge of such an injury to the employer by virtue of the employer's specialized training.

DISSENT BY LESINSKI, C. J.

9. WORKMEN'S COMPENSATION—NOTICE OF INJURY—EVIDENCE—QUESTION OF FACT—APPELLATE REVIEW.

*The determination of whether an employer had notice of a compensable injury is a question of fact for the Workmen's Compensation Board; review by an appellate court of a factual determination made by the appeal board is limited to an inquiry whether there is any evidence whatever to support the determination of the board.*

Appeal from Workmen's Compensation Appeal

Board. Submitted Division 1 November 8, 1973, at Detroit. (Docket No. 15992.) Decided March 5, 1974. Leave to appeal granted, 392 Mich —.

Claim by Leonard Lewis against Chrysler Corporation for workmen's compensation benefits. Compensation awarded. Defendant appeals by leave granted. Reversed.

*Marston, Sachs, O'Connell, Nunn & Freid, P. C.* (by *A. Donald Kadushin),* for plaintiff.

*Lacey & Jones* (by *Hayim I. Gross),* for defendant.

Before: LESINSKI, C. J., and FITZGERALD and CARLAND,* JJ.

FITZGERALD, J. Defendant appeals by leave granted from a decision of the Workmen's Compensation Appeal Board awarding disability benefits and compensation for the specific loss of plaintiff's right leg. The sole issue before us is whether proper notice of plaintiff's disability was timely given within the provisions of MCLA 418.381; MSA 17.237(381).

Plaintiff commenced work in Chrysler Corporation's shipping department in 1953. In 1965, he became an electrician. On February 1, 1966, after having worked a full day and the previous week installing overhead light fixtures, plaintiff noticed soreness in his feet. He treated the sore feet by immersing them at night in a warm Epsom salt solution. The soreness continued. Several days later, plaintiff noticed blisters developing on his right foot. He sought medical treatment and a

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

doctor lanced the blisters. Several weeks later, plaintiff went to Ford Hospital for a regular check-up of his pre-existing diabetic condition. That examination revealed osteomyelitis in the right foot. Osteomyelitis is a deep-seated infection involving the bone structure. Because plaintiff was diabetic, the osteomyelitis required amputation of the infected member. On April 19, 1966, plaintiff's right leg was amputated six inches below the knee.

Plaintiff was off work for more than a year, returning to work in September 1967. He was fitted with a prosthesis. At the time of hearing, plaintiff continued to work for Chrysler Corporation in a sit-down job. Plaintiff's last day of work prior to the amputation was February 14, 1966.

From the beginning of his stay in the hospital for the amputation, plaintiff had been in contact with Chrysler Corporation's group health insurance department. He submitted claim forms almost monthly for medical benefits and treatment.

Plaintiff testified that the first time he knew that he had a workmen's compensation claim was in February 1967 when he consulted his present attorney on an unrelated civil matter. Application for hearing was filed in April 1967.

Following hearing, the referee entered an award, finding a personal injury on February 13, 1966, and awarding disability benefits from February 14, 1966 to April 18, 1966, as well as compensation for 215 weeks starting April 19, 1966, for the specific loss of plaintiff's right leg. The Workmen's Compensation Appeal Board affirmed the referee's decision and this appeal followed.

MCLA 418.381; MSA 17.237(381) states in pertinent part:

"No proceedings for compensation for an injury under this act shall be maintained, unless a notice of the

injury has been given to the employer within 3 months after the happening thereof and unless the claim for compensation with respect to the injury, which claim may be either oral or in writing, has been made within 6 months after the occurrence of the same; * * * . In a case in which the employer has been given notice of the injury, or has notice or knowledge of the same within 3 months after the happening thereof, but the actual injury, disability or incapacity does not develop or make itself apparent within 6 months after the happening of the injury, but does develop and make itself apparent at some date subsequent to 6 months after the happening of the same, claim for compensation may be made within 3 months after the actual injury, disability or incapacity develops or makes itself apparent to the injured employee, but no such claim shall be valid or effectual for any purpose unless made within 3 years from the date the personal injury was sustained."

Defendant asserts that the test for adequacy of notice is whether or not plaintiff sufficiently and timely conveyed to defendant the fact that a compensable claim existed. It is plaintiff's contention, and the appeal board apparently agreed, that defendant did receive notice that a work-related injury had been sustained by virtue of plaintiff's submission of a group health insurance claim as early as March 1966. The board stated in its opinion at pages 10 and 11:

"There is no dispute that defendant had knowledge of plaintiff's amputation and resulting disability. Plaintiff called defendant's medical service and was sent group insurance forms. Plaintiff should not be penalized for his inaccuracy in presenting his claim. It is true plaintiff spoke to defendant about his medical result and not the causation and it is understandable why defendant has framed his question. Plaintiff, however, should not be penalized for ignorance of legal nicety. Defendant has trained people who are familiar with these situations. They did not recognize the possibility the amputa-

tion and resulting disability may have arisen out of and in the course of plaintiff's employment with defendant."

We agree with defendant's position that the board's reasoning erroneously shifted from plaintiff to defendant the burden of proving that plaintiff's injury did, in fact, arise out of and in the course of plaintiff's employment. The Supreme Court stated in *Clifton v Chrysler Corp,* 287 Mich 87, 92; 282 NW 912, 914 (1938):

"The burden is upon plaintiff to show the happening of an accidental injury arising out of and in the course of his employment; and further the burden is upon plaintiff to show that within three months after the happening of such an accident the defendant employer had notice or knowledge thereof. 2 Comp Laws 1929, § 8431. It is not enough that within the statutory period the employer has knowledge that during his hours of employment the employee has become ill or even that he has suffered an injury which was not compensable."

Recognizing that determination of whether defendant had notice of the compensable injury is a question of fact for the Workmen's Compensation Appeal Board, our review of the record discloses no evidence from which we can conclude that defendant received sufficient notice of the injury. *Williams v Chrysler Corp,* 29 Mich App 398; 185 NW2d 403 (1971). Plaintiff's application for health insurance benefits is not tantamount to providing notice of a compensable work-related injury. It is urged that the combination of defendant's presumed knowledge that plaintiff suffered from a compensable work-related injury, together with the absence of an intent to mislead defendant by plaintiff's claim for health insurance benefits, adequately satisfies the statutory notice requirement. We think it incongruous to consider plaintiff's

claim for group insurance benefits which provide compensation for non-work-related injuries as providing sufficient notice to defendant of a compensable work-related injury. The opinion of the appeal board wished to accommodate plaintiff by ignoring the fact that his claim was inaccurately presented and conceded further that plaintiff spoke only of his medical results and not of the circumstances surrounding the causation. However, the board's reluctance to penalize plaintiff for what is termed as "ignorance of a legal nicety" results in the defendant being forced to assume the financial burden of compensating plaintiff for an injury without receiving notice in accordance with the statute. It is not incumbent upon the defendant to inquire as to whether plaintiff's injury was of a work-related nature. Notice of a compensable injury must be communicated to defendant, and we are unwilling to elevate plaintiff's conduct to the level of having provided sufficient notice to defendant of a compensable work-related injury. Defendant's knowledge of plaintiff's amputation and resulting disability does not constitute sufficient notice in the absence of communication to defendant that the injury arose out of and in the course of employment. *Maki v S J Groves & Sons,* 279 Mich 644; 273 NW 300 (1937); *Clark v Apex Foundry, Inc,* 7 Mich App 684; 153 NW2d 182 (1967).

In the alternative, plaintiff contends his application for workmen's compensation benefits filed in April 1967 satisfies the statutory notice requirement since it was not until February 1967 that plaintiff was advised of his apparent eligibility for compensation benefits. He argues that since the statutory period did not commence until February 1967, his petition, filed in April, constituted timely notice. *Finch v Ford Motor Co,* 321 Mich 469; 32 NW2d 712 (1948), and *Jordon v Michigan Mallea-*

*ble Iron Co,* 363 Mich 256; 109 NW2d 832 (1961), are advanced by plaintiff for the proposition that the statutory period for notice and claim does not begin to run until the employee has knowledge of the cause of his condition. Further, plaintiff conceives a two-fold test applicable to occupational diseases which triggers commencement of the statutory period. It is argued that both knowledge of the nature of the diseased condition and of the relationship of the disability with employment are required, citing *Brown v Revere Copper & Brass Corp,* 42 Mich App 143; 201 NW2d 326 (1972). Were defendant to interpret *Brown* as requiring knowledge of plaintiff's disability only, the recently decided *Tillotson v Penn-Dixie Cement Corp,* 47 Mich App 427; 209 NW2d 611 (1973), clearly requires that plaintiff have knowledge of the work-related nature of the disability.

This case is controlled by *Bacon v Penn-Dixie Corp,* 35 Mich App 69; 192 NW2d 397 (1971). There, it was argued that a claim filed 1-1/4 years after a heart attack was suffered did not fall within the statutory period and compensation was accordingly denied. This Court stated at p 72:

"Plaintiff cites *Finch v Ford Motor Co,* 321 Mich 469; 32 NW2d 712 (1948), and *Jordon v Michigan Malleable Iron Co,* 363 Mich 256: 109 NW2d 832 (1961), in support of his claim that his ignorance as to the work-relatedness of his injury excused his failure to give defendant notice of injury as required by statute.

"In *Finch* and *Jordon* the claimants were not aware they were suffering from any disease until after they had received a medical examination, but after acquiring knowledge of the diseases they immediately filed notices within the statutory period. The Supreme Court noted that the claimants could not have filed their notices prior to the examinations because they did not have knowledge they were suffering from a disease, but as

soon as they acquired the knowledge the period for filing started to run.

"In the present case the plaintiff had immediate knowledge of his injury so that there was no lack of knowledge of injury which prevented him from filing notice.

"The date of injury or the date a claimant learns he is suffering from a disease is the date the statutory period begins to run. *Joslin v Campbell, Wyant & Cannon Foundry Co*, 359 Mich 420; 102 NW2d 584 (1960). The claimant has a duty to give notice at this time, not when he learns the injury could possibly be work-related.

"Plaintiff argues that his heart attack may have been an occupational disease rather than a personal injury. We need not consider this question since the period of limitations had expired for both a personal injury (MCLA 412.15 [MSA 17.165]) and an occupational disease (MCLA 412.15 [MSA 17.165] and MCLA 417.10 [MSA 17.229])." 35 Mich App 69 at 72–73; 192 NW2d 397 at 399–400 (1971).

Plaintiff in the instant case had knowledge of his incapacity at the time the amputation was performed. It was at this time that plaintiff had a duty to properly notify his employer of the claim and not one year later when his attorney suggested that the injury might be considered work-related. We are aware of *Brown v Revere Copper & Brass Corp, supra,* and *Tillotson v Penn-Dixie Cement Corp, supra,* but distinguish them on the basis that their underlying rationales both apply to occupational diseases distinct from the case at bar. The Court in *Tillotson* measured the statutory period within which a claim must be filed from the time the employee "has knowledge or reasonable grounds for knowledge of the disability and when he discovers or by reasonable diligence could discover that this disability may be work-related". With this reasoning we agree vis-a-vis occupational

diseases caused by continuous and prolonged expo-
sure to certain harmful elements in the working
environment, the effects of which may not be
known until a later time. The instant case differs
in that no latent symptoms of disablement exist.
Here, no further complications resulted following
the amputation. The rationale advanced in *Tillot-
son* seeks to provide benefits for occupational disa-
bilities, the symptoms of which do not appear until
the worker has ceased employment.

Nor do we have, as in *Brown,* the conflicting
testimony of specialists which categorize the dis-
ability as one ranging from the normal attrition of
advancing age to that of work-related exposure.
The parties are in agreement that the disability
occurred at the time the amputation was per-
formed. The passage of time between the amputa-
tion and plaintiff's attorney's statement that the
injury might be work-related did not reveal any
conditions or changes that were not apparent at
the outset. Plaintiff here does not require the
sophisticated medical analysis provided by the
expert witnesses in *Brown* to determine the rela-
tionship between the injury and his employment.
The traumatic amputation of plaintiff's leg falls
within the category of an industrial injury rather
than an occupational disease. Hence, these circum-
stances do not satisfy the factual setting outlined
in *Brown* which triggers commencement of the
notice period when plaintiff is medically informed
of the work relationship of his disability.

The findings of the board failed to indicate any
evidence to support their conclusion that defend-
ant had notice that plaintiff suffered a work-re-
lated injury. The board concedes that plaintiff's
claim for sickness and accident benefits was not
the proper vehicle to utilize where a compensable

injury was suffered, yet infers knowledge of such an injury to defendant by virtue of defendant's specialized training. By waiving what is cavalierly referred to as "legal niceties", the board improperly places the burden of proving that a work-related injury occurred upon the defendant. This is not the law in Michigan and we decline to make it so today.

Finally, plaintiff argues that the defendant suffered no prejudice as a result of the delay and therefore the claim should be awarded. This contention has been rejected in *Thomas v Griffin Wheel Co,* 8 Mich App 35; 153 NW2d 387 (1967).

The notice provisions of MCLA 418.381; MSA 17.237(381) were not complied with under the circumstances of this case.

Reversed. No costs.

CARLAND, J., concurred.

LESINSKI, C. J. (dissenting). The notice question presented by this appeal should be resolved by following the well-established principles enunciated in *Williams v Chrysler Corp,* 29 Mich App 398, 401–402; 185 NW2d 403, 404 (1971):

"The determination of whether the employer had notice of a compensable injury is a question of fact for the board. *West v Northern Tree Co,* 365 Mich 402; 112 NW2d 423 (1961); *Banks v Packard Motor Car Co,* 328 Mich 513; 44 NW2d 166 (1950); *Clark v Apex Foundry, Inc,* 7 Mich App 684; 153 NW2d 182 (1967). Review by an appellate court of a factual determination made by the Workmen's Compensation Appeal Board is limited to an inquiry whether there is any evidence whatever to support the determination of the appeal board. *Clark v Apex Foundry, Inc, supra;* Const 1963, art 6, § 28."

Since notice is a question of fact for the appeal

board, the board's finding that the employer had notice of a compensable injury should not be disturbed on appeal. The board concluded:

"There is no dispute that defendant had knowledge of plaintiff's amputation and resulting disability. Plaintiff called defendant's medical service and was sent group insurance forms."

Although we might come to a different conclusion as to the existence of notice if our review were afresh, the plaintiff's contact with defendant's medical services sufficiently satisfies the "any evidence whatsoever" standard of review.

I vote to affirm.