GIRLISH v ACME PRECISION PRODUCTS, INC

Docket No. 59138. Argued December 9, 1977 (Calendar No. 16).—
Decided December 29, 1978. Rehearing denied 406 Mich 1103.

Brenda C. Girlish sustained a back injury in February, 1971, in
the course of her employment by Acme Precision Products, Inc.
She was denied workmen's compensation benefits by the Work-
men's Compensation Appeal Board on the ground that she had
not given her employer timely notice of her injury as required
by statute. The plaintiff was treated for influenza on March 1,
1971, and claimed health and accident insurance benefits under
her employer's group health and accident policy on March 8,
1971 for influenza. She was treated on March 10 for her back
injury. On April 5, 1971 the defendant employer's health and
accident insurer received notice from the plaintiff's doctor of
the back injury and the plaintiff's health and accident benefits
ended April 30, 1971 because the insurer's doctor decided that
the plaintiff was not disabled under the terms of the group
health and accident policy. The Workmen's Compensation Ap-
peal Board found, upon remand by the Supreme Court, 394
Mich 836 (1975), that the statutory three-month notice period
began to run on March 10, 1971, the date the plaintiff first
received medical treatment for her back injury. The defendant
employer did not receive actual notice of the plaintiff's back
injury until June 21, 1971. The Court of Appeals, D. F. Walsh,
P.J., and Allen and R. B. Burns, JJ., denied leave to appeal
(Docket No. 29222). Plaintiff appeals. *Held:*

1. It would be an inequitable rule of law to deny an employee
who has suffered an otherwise compensable injury workmen's
compensation benefits because an employer or his group health
and accident carrier voluntarily paid alternative benefits dur-
ing the three-month notice period. This is especially true be-
cause the unsophisticated employee, possibly on the advice of
the employer or union representative, is usually operating on
the justifiable belief that the alternative benefits received are
the correct benefits. The employee, who is receiving benefits,

REFERENCES FOR POINTS IN HEADNOTES
[1-4, 6] 82 Am Jur 2d, Workmen's Compensation §§ 442-456.
[5] 28 Am Jur 2d, Estoppel and Waiver §§ 154-156.

has no reason to believe there is any further need to act to preserve his right to compensation.

2. In the case at bar it took the group health and accident carrier, presumably more knowledgeable than the plaintiff in such matters, 2 months and 18 days to determine that she was not ill but had suffered a work-related injury. The plaintiff should not be denied workmen's compensation for an otherwise work-related compensable injury because the employer did not learn for 3 months and 12 days (only 24 days after the insurance carrier reached the same conclusion) that plaintiff had been injured and was not ill.

3. It is idle to suggest that the employer in this case was unduly prejudiced by the 12-day delay beyond the statutory period in the receipt of notice. During the period in which the plaintiff was receiving group health and accident benefits, she was receiving regular medical treatments. The record of those treatments was readily available had the employer wished to contest the compensability of the plaintiff's injury.

4. An employer impliedly waives his right to notice during that period of time when his insurance carrier voluntarily furnishes alternative medical benefits to an employee who has suffered an otherwise compensable injury. This implied waiver, however, only suspends the running of the notice provision of the Worker's Disability Compensation Act for filing the compensation claim from the date alternative benefits begin until the payments end or notice is given that payment of the medical benefits has been ended, whichever occurs later. An implied waiver will only arise, however, (1) when the notice period is running because an employee has the requisite knowledge of a possible work-related disability; (2) when an employer or his insurance carrier voluntarily furnishes during the notice period alternative medical benefits to an employee who has suffered an otherwise compensable injury; and (3) when the Workmen's Compensation Appeal Board does not find any attempted fraud on the part of the employer or the employee in either the furnishing or the accepting of the alternative benefits.

The order of Workmen's Compensation Appeal Board is vacated. The case is remanded to the board for further proceedings.

Justice Ryan, who was joined by Justices Coleman and Fitzgerald, dissented on the grounds that the statutory scheme and relevant case law do not relieve the plaintiff of her failure to give notice of injury.

1. The Worker's Disability Compensation Act explicitly pro-

vides that the six-month period for filing the workmen's compensation claim is tolled during the period beginning with timely notice of the happening of the injury or the employer's acquisition of knowledge of the happening of the accident and continuing until the employer files the required report of the injury with the Workmen's Compensation Bureau. However, the statute is silent as to whether voluntary payment of sickness and accident benefits tolls the statutory period during which the employee is required to provide notice of an injury or accident. The Workmen's Compensation Appeal Board's finding in this case was that the plaintiff's claim was barred by failure to give notice.

2. Furthermore, the obligations to give notice of an injury and to file a claim for compensation are two entirely separate duties imposed on an injured employee. The Court glosses over the distinction to obviate an analysis that would show that even under generally accepted legal principles outside of the statute, such as waiver and estoppel, there is no basis for relief of the failure to give notice. The purpose of statutory provisions in other states and decisions applying waiver or estoppel which toll the claim period while "other compensation" is paid is both to protect employees and prevent employers from relying on the limitations period where the employer's actions are designed to, or could be expected to, cause an employee to delay filing a *claim*. This logic does not extend to the requirement that *notice* of the injury be given.

3. There is no basis on these facts for finding an implied waiver by the defendant of the notice requirement. Waiver is the intentional or voluntary relinquishment of a known right. As in the case of estoppel, waiver may be found where a party acts with some knowledge of the facts. Establishment of a rule tolling the notice period whenever an employer provides sickness and accident benefits is unsupportable. It is absurd to suggest that the defendant waived receipt of notice of a back injury because it provided benefits to the plaintiff for influenza. An employer could not reasonably expect that payment of sickness and accident benefits would cause an employee to refrain from filing a workmen's compensation claim for a back injury where the employer is unaware that such a claim exists. The implied waiver theory cannot logically be applied where an employee fails to give notice of the injury for which workmen's compensation is claimed.

OPINION OF THE COURT

1. WORKMEN'S COMPENSATION — NOTICE OF INJURY — WAIVER — ALTERNATIVE BENEFITS.

An employer impliedly waives his right to notice of a work-related injury under the Worker's Disability Compensation Act during the time the employer's insurance carrier voluntarily furnishes alternative medical benefits to an employee who has the requisite knowledge of a work-related disability which is otherwise compensable where there is no fraud on the part of the employer or employee in the furnishing or accepting of the alternative benefits (MCL 418.381; MSA 17.237[381]).

2. WORKMEN'S COMPENSATION — NOTICE OF INJURY — WAIVER — ALTERNATIVE BENEFITS.

Furnishing of alternative medical insurance benefits by an employer to an employee who has suffered a compensable injury suspends the running of the period of notice for a workmen's compensation claim from the date alternative benefits begin until the payments end or notice is given that payment of the alternative medical benefits has been terminated, whichever occurs later (MCL 418.381; MSA 17.237[381]).

DISSENTING OPINION BY RYAN, J.

3. WORKMEN'S COMPENSATION — NOTICE OF INJURY — WAIVER — ALTERNATIVE BENEFITS.

*The Worker's Disability Compensation Act, which explicitly provides for tolling of the claim period under prescribed circumstances, does not toll the claim period for voluntary payment of sickness and accident benefits, upon which the statute is silent (MCL 418.381; MSA 17.237[381]).*

4. WORKMEN'S COMPENSATION — NOTICE OF INJURY — CLAIM.

*The obligations to give notice of an injury to an employer and to file for workmen's compensation benefits are two entirely separate duties imposed on an injured employee by statute; although compliance with both requirements may be accomplished simultaneously, it need not be (MCL 418.381; MSA 17.237[381]).*

5. WORDS AND PHRASES — WAIVER.

*Waiver is the intentional or voluntary relinquishment of a known right; a waiver may be found from a party's conduct where the party acts with some knowledge of the facts.*

6. WORKMEN'S COMPENSATION — NOTICE OF INJURY — IMPLIED
   WAIVER — ALTERNATIVE BENEFITS.

*The theory of an implied waiver of notice of injury cannot be applied to a claim for workmen's compensation where an employee fails to give notice of the injury for which workmen's compensation is claimed; an employer could not reasonably expect that payment of sickness and accident benefits for an employee's influenza condition would cause an employee to refrain from filing a claim for a back injury where it is unaware that such a claim for a back injury exists (MCL 418.381; MSA 17.237[381]).*

*Lopatin, Miller, Bindes, Freedman & Bluestone* (by *Michael A. Gantz)* for plaintiff.

*Lacey & Jones* (by *John L. Salter)* for defendant.

BLAIR MOODY, JR., J. The question presented is whether plaintiff's workers' compensation claim is barred by her failure to notify her employer of a compensable injury within the three-month statutory period when her employer's group health and accident insurance carrier furnished the injured employee alternative medical benefits during the limitation period.

We hold that an employer impliedly waives his right to notice when his group health and accident insurance carrier furnishes alternative medical benefits to an employee who has suffered an otherwise compensable injury. This implied waiver only suspends the running of the statute of limitations for filing the compensation claim from the date alternative benefits are commenced until the payments are terminated or notice is given that payment of the medical benefits has been terminated (whichever occurs later).

I

In February, 1971, plaintiff, Brenda Girlish, sus-

tained a back injury in the course of her employment as a processor for defendant, Acme Precision Products, Inc. Plaintiff testified that she felt a "ripping sensation" in her lower back while pushing a heavy box of die castings to a co-worker. As a processor, plaintiff was routinely required to push such boxes to co-workers.

The exact date of the back injury was disputed. However, plaintiff ceased working for defendant on February 28, 1971, due to an attack of influenza. The hearing referee and the Worker's Compensation Appeal Board (WCAB) eventually determined the date of the back injury also to be February 28.

On March 1, 1971, plaintiff visited her doctor for treatment of her influenza. Additionally, she filed an insurance claim form for health and accident benefits for her influenza condition on March 8, 1971.

Plaintiff first received treatment for her back injury from her doctor on March 10, 1971. (The WCAB subsequently found, upon remand, that the three-month statutory notice requirement began to run from March 10. MCL 418.381; MSA 17.237[381]. See fn 3, *infra*.)

On April 5, 1971, defendant employer's health and accident insurance carrier received a supplemental notice from the attending physician concerning plaintiff's back injury. Since this was the first notice given to the insurance carrier of plaintiff's back injury, the carrier apparently ordered an investigation to determine the nature of the injury.

In a letter dated April 23, 1971, the insurance carrier informed plaintiff, "In connection with your weekly indemnity claim, we have arranged to have you examined by Dr. Charles Zinn".[1] That

---

[1] On the face of the letter, *sent within the statutory three-month*

examination occurred April 30, 1971.

On May 27, 1971, employer's insurance carrier contacted plaintiff by telephone and indicated that she was no longer entitled to weekly benefits. Evidently, Dr. Zinn concluded that she was not disabled *for purposes of health and accident benefits.* This telephone conversation was confirmed by a letter to plaintiff dated May 28, 1971.

Plaintiffs' benefits were terminated as of April 30, 1971. She had received health and accident benefits during the months of March and April, 1971.

On June 8, plaintiff's doctor notified the insurance carrier that he had seen plaintiff several times concerning her disability and diagnosed it as "lumbo sacral instability". He recommended no work. On June 21, in a letter to plaintiff, the insurance carrier acknowledged the doctor's letter, and stated: "After a review of all available medical information in this file it has been determined that no additional weekly indemnity benefits can be paid."[2]

In his decision of September 11, 1972, the hearing referee found that plaintiff's back injury arose out of and in the course of plaintiff's employment with defendant. MCL 418.301; MSA 17.237(301). However, he denied benefits because plaintiff had failed to give defendant notice of injury within three months as required by MCL 418.381; MSA 17.237(381).

Thereafter, an appeal was taken to the WCAB. On March 21, 1974, the board affirmed the hearing

---

*period,* appeared: "bcc: Mr. Hal Kempe—Acme Precision Products, Inc."

[2] The letter also indicated, "cc: Mr. Hal Kempe, Acme Precision Prod., Inc."

referee. The board apparently agreed that a compensable injury occurred but also denied benefits because the notice period had run. The Court of Appeals denied leave to appeal on November 20, 1974. On August 19, 1975, this Court remanded the case to the board for reconsideration in light of *Lewis v Chrysler Corp,* 394 Mich 360; 230 NW2d 538 (1975). 394 Mich 836 (1975).

The board again affirmed the decision of the hearing referee that plaintiff's claim must fail for lack of timely notice.[3] The Court of Appeals again denied leave to appeal. We granted leave to appeal. 400 Mich 803 (1977).

## II

The Worker's Disability Compensation Act of 1969 is silent as to whether a plaintiff's compensation claim is barred by her failure to notify her employer of an otherwise compensable injury within three months when the *employer's* group health and accident carrier furnishes the injured employee alternative benefits during the limitation period. MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.*

The applicable notice requirement, as embodied in MCL 418.381; MSA 17.237(381), merely states that:

---

[3] This case was evidently remanded to the WCAB for reconsideration in light of *Lewis* because plaintiff may have confused her influenza symptoms with her back ailment. Therefore, it was conceivable that she was not aware that her back pains were work-related.

On remand, however, the WCAB found that on March 10, 1971, the notice period began to run because plaintiff then had knowledge of her disability, or could have reasonably discovered or had reason to believe that her disability was work-related. The board believed it was required to deny benefits because the statutory notice period ran from March 10 to June 10, 1971. Since it was determined that defendant employer did not receive notice of injury until June 21, 1971, plaintiff's claim was barred because it was filed 12 days late.

"No proceedings for compensation for an injury under this act shall be maintained, unless a notice of the injury has been given to the employer within 3 months after the happening thereof. and unless the claim for compensation with respect to the injury, which claim may be either oral or in writing, had been made within 6 months after the occurrence of the same."

This Michigan notice statute, enacted and re-enacted[4] before fringe benefits such as health and accident insurance were provided for industrial workers, does not instruct the Workmen's Compensation Bureau how to proceed in cases where alternative benefits, in lieu of compensation, are voluntarily paid to an employee who has suffered a compensable injury.

In many states, the notice statute specifically provides that the payment of any voluntary compensation by the employer during the notice period suspends or tolls the running of the statute until such payments cease. *Cf.* 3 Larson, Workmen's Compensation Law, § 78.43(a), and the cases cited therein.[5]

In other states, where there is no explicit statu-

---

[4] It should be noted that the Legislature originally enacted the pertinent portion of this notice provision in 1912. Since 1912, the Legislature has reenacted basically the same language each time it has seen fit to amend the compensation statute as a whole. See 1912 (1st Ex Sess) PA 10, part II, § 15. Also see 1919 PA 64, 1943 PA 245, 1954 PA 175, 1965 PA 44, 1969 PA 317.

The repetitive reenactment of this same statutory language regarding the notice period leads us to the inevitable conclusion that the Legislature has never considered the effect which the payment by the employer of voluntary alternative benefits should have on the three-month notice period.

[5] See, for example, *Gourley v Grand Island,* 168 Neb 538; 96 NW2d 309 (1959).

The Nebraska statute, as interpreted by the Nebraska Supreme Court, specifically provided that the voluntary payment of compensation by the employer suspends or tolls the notice period:

"Defendant contends that this action is barred by section 48-137, RRS 1943, which provides in part: 'In case of personal injury, all claim for compensation shall be forever barred unless, within one

tory provision, the same result is often arrived at by the application of a waiver theory. Specifically, in many jurisdictions, it has been held that the employer waives his right to notice during the period within which he makes other voluntary compensation payments. See generally Anno: *May notice of injury or claim contemplated by Workmen's Compensation Act be waived*, 78 ALR 1306, and the cases cited therein.[6]

"The general idea is that an employee who has been receiving compensation * * * cannot reasonably be expected to have made claim during that period, and should not, upon cessation of voluntary payments * * * , be allowed [a shorter time period] in which to file his claim." 3 Larson, *supra*, p 15-113.

---

year after the accident, the parties shall have agreed upon the compensation payable under this act, or unless, within one year after the accident, one of the parties shall have filed a petition as provided in section 48-173. * * * *Where, however, payments of compensation have been made in any case, such limitation shall not take effect until the expiration of one year from the time of making of the last payment.'*

"This action was commenced in the compensation court by the filing of a petition on December 11, 1957.

"We have held: 'Where an employer furnishes medical, surgical, and hospital services to an employee, * * * the payments therefor constitute payment of compensation within the meaning of the employers' liability act.' [Citation omitted.]

"Under the conditions existing here the defendant had furnished the plaintiff medical services and medicines. He was then working or on sick leave with pay. He was being paid the compensation which at that time he was in a position to demand. It accordingly must be held that plaintiff was paid compensation up to January 2, 1957. *This is sufficient to toll the running of the one year statutory provision under its express terms.*

"We accordingly find that the defense of the statutes is not sustained." (Emphasis added.)

[6] *Pine v State Industrial Commission*, 148 Okla 200; 298 P 276; 78 ALR 1287 (1931), contains a lengthy discussion which provides a historical perspective for employing a waiver theory in those cases where notice provisions are silent regarding the voluntary payment of compensation by employers. Also see *Poole v E I duPont De Nemours & Co*, 227 SC 232; 87 SE2d 640 (1955), as an example of a case where a waiver theory is utilized.

Many controversies have arisen as to what constitutes a voluntary compensation payment which suspends the running of the notice period. However, most jurisdictions have held that the payment of medical benefits by a private employer-employee insurance plan (such as the one involved in this case) constitutes the voluntary payment of compensation and thus suspends or tolls the notice statute. See generally Anno: *Payments, or furnishing medical or hospital services, or burial, by employer or his insurer, to employee after injury, as affecting time for filing claim under Workmen's Compensation Act,* 144 ALR 606, and the cases cited therein.[7]

It would be an ironic and inequitable rule of law if this Court were to deny an employee, who has suffered an otherwise compensable injury, compensation benefits because an employer or his sickness and accident carrier voluntarily paid alternative benefits during the three-month notice period. This is especially true because the unsophisticated employee, possibly on the advice of the employer or union representative, is usually operating on the justifiable belief that the alternative benefits received are the correct benefits. The employee, who is receiving benefits, has no reason to believe there is any further need to act to preserve his right to compensation.

Furthermore, it should not go unnoticed in the case at bar that it took the sickness and accident carrier, presumably more knowledgeable than the plaintiff in such matters, 2 months and 18 days to determine that she was not ill but had suffered a work-related injury. We cannot agree that the

---

[7] Also see, 3 Larson, Workmen's Compensation Law, § 78.43(a), fn 84, and § 78.43(b), fn 98, for an exhaustive compendium of state cases which have held the payment of medical benefits by an employer constitutes the voluntary payment of compensation.

plaintiff should be denied compensation for an otherwise work-related compensable injury because the employer did not learn for 3 months and 12 days (only 24 days after the insurance carrier reached the same conclusion) that plaintiff had been injured and was not ill.

We also believe that it is idle to suggest that the employer in this case was unduly prejudiced by the 12-day delay in the receipt of notice. During the period in which the plaintiff was receiving sickness and accident benefits, she was receiving regular medical treatments. The record of those treatments was readily available had the employer wished to contest the compensability of the plaintiff's injury.

Based upon the equitable considerations[8] discussed, *supra,* and in the absence of a legislative mandate to the contrary, we hold that an employer impliedly waives his right to notice during that period of time when his insurance carrier voluntarily furnishes alternative medical benefits to an employee who has suffered an otherwise compensable injury. This implied waiver, however, only suspends the running of the notice statute for

[8] "In any event, where the purposes of a statute can be achieved only by extending the operation of its language to its most inclusive meaning, even beyond its common meaning, that is done. And where a literal interpretation would produce gratuitous results beyond the purpose for which the act was passed, its language will be construed restrictively to embrace less than its customary meaning in order to avoid those results.

"*The rule for the construction of remedial statutes is that cases within the reason, though not within the letter, of a statute shall be embraced by its provisions; and cases not within the reason, though within the letter, shall not be taken to be within the statute.*" (Emphasis added.) 2A Sutherland Statutory Construction (4th ed), *The Equity of the Statute,* §§ 54.01-54.08, especially § 54.04, pp 358-359.

Workers' compensation legislation is remedial legislation; its procedural requirements should be liberally interpreted to effectuate substantial justice.

Also see 3 Sutherland Statutory Construction (4th ed), *General Welfare Legislation,* § 71.06.

filing the compensation claim from the date alternative benefits are commenced until the payments are terminated or notice is given that payment of the medical benefits has been terminated (whichever occurs later).

We must emphasize, however, the narrowness of today's holding. An implied waiver situation will only arise:

(1) when the notice period is running because an employee has the requisite knowledge of a possible work-related disability, *Lewis, supra;* and

(2) when an employer or his insurance carrier voluntarily furnishes during the notice period alternative medical benefits to an employee who has suffered an otherwise compensable injury; and

(3) when the referee and (or) the WCAB do not find any attempted fraud on the part of the employer or the employee in either the furnishing or the acceptance of the alternative benefits.[9]

## III

In the instant case, the aforementioned holding means that the WCAB should determine the date upon which alternative benefits were commenced

___

[9] We have not discussed the possibility of fraud in this opinion because it is apparent from the facts that neither the employer nor the employee was attempting to deceive the other in the furnishing or the acceptance of the incorrect benefits in this case.

However, this Court can foresee a situation where it is conceivable that the employer might intentionally "lull" the employee into accepting the incorrect benefits in order to avoid a workers' compensation award. We can also imagine a set of circumstances where the employee might knowingly accept the incorrect benefits in order to obtain compensation benefits at some later date.

If an employer was found to be perpetrating such a fraud, the employer would be *estopped* from utilizing the statute of limitations as a defense and the implied waiver need not be considered. On the other hand, if an employee attempted to perpetrate such a fraud, that employee would be estopped from invoking the implied waiver theory set forth in this opinion.

and the date upon which notice was given that benefits were to be terminated (since that appears to be the later date). The board should then subtract this period of time from the three-month notice period. If it appears, as it certainly does in this case, that notice was then given within the applicable notice period, compensation benefits are to be awarded.

The order of Worker's Compensation Appeal Board is vacated. This case is remanded to the board for proceedings not inconsistent with this opinion. No costs; a public question.

KAVANAGH, C.J., and WILLIAMS and LEVIN, JJ., concurred with BLAIR MOODY, JR., J.

RYAN, J. *(dissenting).* The majority has determined that although no provision of the Worker's Disability Compensation Act of 1969 or apposite case law would afford Brenda Girlish relief from her failure to comply with the legislatively established notice requirements, the defendant may nevertheless not have the benefit of the applicable statute of limitations because it provided Ms. Girlish with sickness and accident benefits for a reported case of the flu.

I dissent.

## I

The statutory scheme established in the compensation act[1] requires an employee in plaintiff's situ-

---

[1] MCLA 418.381; MSA 17.237(381) provides:

"(1) No proceedings for compensation for an injury under this act shall be maintained, unless a notice of the injury has been given to the employer within 3 months after the happening thereof and unless the claim for compensation with respect to the injury, which claim may be either oral or in writing, has been made within 6 months after the occurrence of the same; or in case of the death of the

ation, one who has suffered an injury that is not an occupational disease,[2] to provide his or her employer with notice of injury within three months of its happening and further to file a claim for compensation with respect to that injury within six months of its occurrence. The statute explicitly provides, *inter alia,* that the six-month period for filing the compensation claim is tolled during the period beginning with timely notice of the happening of the injury or the employer's acquisition of knowledge of the happening of the accident and continuing until the employer files the required report of the injury with the bureau.

The appeal board's finding in the case at bar was that Ms. Girlish was barred by failure to give notice.

The majority concedes that the compensation

employee, within 12 months after death; or in the event of his physical or mental incapacity, within the first 6 months during which the injured employee is not physically or mentally incapacitated from making a claim. In a case in which the employer has been given notice of the injury, or has notice or knowledge of the same within 3 months after the happening thereof, but the actual injury, disability or incapacity does not develop or make itself apparent within 6 months after the happening of the injury, but does develop and make itself apparent at some date subsequent to 6 months after the happening of the same, claim for compensation may be made within 3 months after the actual injury, disability or incapacity develops or makes itself apparent to the injured employee, but no such claim shall be valid or effectual for any purpose unless made within 3 years from the date the personal injury was sustained. Any time during which an injured employee shall be prevented by reason of his physical or mental incapacity from making a claim shall not be construed to be any part of the 6 months' limitation mentioned in this section. In a case in which the employer has been given notice of the happening of the injury or has notice or knowledge of the happening of the accident within 3 months after the happening of the same, and fails, neglects or refuses to report the injury to the bureau as required by the provisions of this act, the statute of limitations shall not run against the claim of the injured employee or his dependents, or in favor of the employer or his insurer, until a report of the injury has been filed with the bureau."

[2] The appeal board found that plaintiff's disability resulted from a single event injury.

act is silent as to whether voluntary payment of
sickness and accident benefits tolls the statutory
period during which an employee is bound to
provide notice of an injury or accident. I believe it
is too plain to dispute that the statute, which
explicitly provides for tolling of the claim period
under prescribed circumstances, lends no support
to the majority's unprecedented decision.[3]

## II

Moreover, I am convinced that an examination
of the relevant case law should provide Ms. Girlish
with no more comfort than the plain language of
the statute does.

I believe the majority makes a fundamental
error in losing the distinction between the *notice*
and *claim* requirements.[4] The obligations to give
notice of an injury and to file claim for compensa-
tion are two entirely separate duties imposed on
an injured employee. Although compliance with
both requirements may be accomplished simulta-

___

[3] It is interesting to note, as the majority points out, that the
relevant statutes in some states specifically provide for tolling when
an employer voluntarily pays "compensation". No case, however, is
cited comparable to the case at bar, applying such a statutory tolling
provision against an employer who is totally unaware of the nature of
the injury for which the employee is seeking compensation. See Part
II, *infra*.

[4] "Notice of injury—the first step in compensation procedure—is
normally given to the employer. The period is comparatively short; it
may be 'forthwith' or 'as soon as practicable,' or a specified period of a
few weeks or months. The purpose is dual: First, to enable the
employer to provide immediate medical diagnosis and treatment with
a view to minimizing the seriousness of the injury; and second, to
facilitate the earliest possible investigation of the facts surrounding
the injury.

"The compensation claim itself, however, is normally filed with the
administrative agency. The period is usually one or two years. The
purpose is the same as that of any limitations statute: to protect the
employer against claims too old to be successfully investigated and
defended. [Footnotes omitted.]" 3 Larson, Workmen's Compensation
Law, § 78.20, pp 15-27, 15-28.

neously, it need not be.[5] The majority glosses over this distinction, obviating the analysis that would reveal that even under generally accepted legal principles outside of the compensation act, such as waiver and estoppel, there is no basis for relieving Ms. Girlish of her failure to give notice of injury.

The underlying rationale for tolling the statute of limitations is discussed by Professor Larson.

"When an employer voluntarily makes compensation payments, the period for filing a *claim* usually dates from the last payment. In many statutes, this rule is written into the claim period section itself; it may also be arrived at by the route of waiver or estoppel. The general idea is that an employee who has been receiving compensation for eleven months cannot reasonably be expected to have made *claim* during that period, and should not, upon cessation of voluntary payments at the end of the eleventh month, be allowed only one month in which to file his *claim*. [Emphasis supplied; footnotes omitted.]" 3 Larson, Workmen's Compensation Law, § 78.43(a), pp 15-111, 15-113.

In other words, the purpose of the "other compensation" provisions as enacted in some statutes and the cases applying waiver or estoppel theory is to both protect employees and prevent employers from relying on the limitations period where the employer's actions are designed to or could be expected to cause an employee to delay filing a claim.[6]

This logic does not extend to the requirement that notice of the injury be given.[7]

---

[5] See, *e.g., Norris v Chrysler Corp*, 391 Mich 469; 216 NW2d 783 (1974).

[6] I express no opinion on the applicability of waiver or estoppel theory to the compensation act under some other set of facts.

[7] Indeed Professor Larson reports:

"Payment of compensation tolls the statute only as to the injury for which the payment is intended as compensation; it cannot toll the

Since the Michigan notice and claim statute does not provide for tolling where "other compensation" is paid, Ms. Girlish must look to other legal principles. Estoppel and implied waiver have been argued.

The majority apparently declines to find the employer estopped from relying on the notice limitation. See footnote 9 of the majority opinion. Implied waiver is, instead, asserted.

Conduct that will constitute an implied waiver is described in Black's Law Dictionary (4th ed), p 1752.

"A waiver is implied where one party has pursued such a course of conduct with reference to the other party as to evidence an intention to waive his rights or the advantage to which he may be entitled, or where the conduct pursued is inconsistent with any other honest intention than an intention of such waiver, provided that the other party concerned has been induced by such conduct to act upon the belief that there has been a waiver, and has incurred trouble or expense thereby."

Waiver is defined as the intentional or voluntary relinquishment of a known right.

It is apparent that, as in the case of estoppel, waiver may be found where a party acts with some knowledge of the facts. There is no basis on the

statute as to another injury received in a prior accident. [Footnote omitted.]" 3 Larson, *supra,* § 78.43(a), p 15-119.
And,
"The concept of medical benefits as payment of compensation does not extend to payment of medical bills understood by the parties to be unrelated to the employment or to medical treatment for a nonoccupational condition subsequent to an accident at work. [Footnotes omitted.]" 3 Larson, *supra,* § 78.43(b), p 15-130.
Cases cited include ones in which the employer is unaware of the nature of the injury for which compensation is claimed.

facts in the case at bar for finding a waiver.[8] To
establish a rule tolling the notice period whenever
an employer provides sickness and accident bene-
fits is unsupportable.

The facts as found by the Worker's Compensa-
tion Appeal Board are that Ms. Girlish simply did
not give notice that she had suffered a back injury
within the three-month notice period. Indeed, it
was found that Ms. Girlish ceased working due to
an attack of influenza, that she filed an insurance
claim for sickness and accident benefits for her
influenza condition and that she did not apprise
the defendant of her back condition until after the
sickness and accident benefits were terminated. It
is absurd to suggest that the defendant waived
receipt of notice of a back injury because it pro-
vided benefits to Ms. Girlish for her bout with the
flu. An employer could not reasonably expect pay-
ment of sickness and accident benefits would cause
an employee to refrain from filing a claim due to a
back injury where it is unaware such a claim
exists. The implied waiver theory cannot logically
be applied where an employee fails to give notice
of the injury for which compensation is claimed.[9]

It is unfortunate for Ms. Girlish that her claim
for compensation is barred (notwithstanding the
majority decision) by failure to comply with the
notice provision of the compensation act. The ap-
parent harshness of the notice and claim require-
ments has, however, been alleviated by numerous

---

[8] The majority suggests that an "unsophisticated employee, possibly
on the advice of the employer or union representative, is usually
operating on the justifiable belief that the alternative benefits re-
ceived are the correct benefits".

Nothing in the record in this case is relied on to suggest that Ms.
Girlish was misled by the defendant.

[9] The majority finds that equity requires the rule announced be-
cause an unsophisticated employee may be misled "possibly on the
advice of the employer". I would add to that: "possibly based on the
notice given by the employee".

decisions of this Court.[10] Ms. Girlish has simply not complied.

The majority is understandably sympathetic to an injured party who may have missed giving notice by a matter of days. The implications of its opinion, however, are quite disturbing. An employee could conceivably receive benefits for some injury or sickness for an extended period of time and, upon recovery from that condition, give notice and claim compensation for an accident far in the past. The possibility for prejudice is great.

The decision of the appeal board should be affirmed.

COLEMAN and FITZGERALD, JJ., concurred with RYAN, J.

---

[10] For example, it has been held that the period for giving notice of claim does not begin to run until the employee has or should have knowledge of the disability. *Jordan v Michigan Malleable Iron Co,* 363 Mich 256; 109 NW2d 832 (1961); *Finch v Ford Motor Co,* 321 Mich 469; 32 NW2d 712 (1948).

The requirements are further tempered by *Lewis v Chrysler Corp,* 394 Mich 360; 230 NW2d 538 (1975), in which we held that the period for giving notice will commence to run only if the employee has discovered or by reasonable diligence could discover that his disability may be work-related.

The appeal board found in the case at bar that the notice period commenced to run for Ms. Girlish on March 10, 1971, the date on which she first sought treatment for her back condition.