### Warren A. MALCOLM

v.

### BATH IRON WORKS CORPORATION and Commercial Union.

Supreme Judicial Court of Maine.

Argued Nov. 9, 1979.

Decided April 28, 1980.

McTeague, Higbee & Tierney, Maurice A. Libner (orally), Brunswick, for plaintiff.

Norman & Hanson, Robert F. Hanson (orally), Stephen Hessert, Portland, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

GODFREY, Justice.

Warren Malcolm appeals from a pro forma decree dismissing his petition for workers' compensation. The commissioner dismissed the petition on the ground that Malcolm did not notify his employer, Bath Iron Works (BIW), that he had been injured within thirty days of the injury as required by 39 M.R.S.A. § 63 (1978).[1] We deny the appeal.

The commissioner made only the following findings in his decision:

It is found that there was no notice given in this case in accordance with pro-

---

1. 39 M.R.S.A. § 63 provides as follows:

No proceedings for compensation under this Act, except as provided, shall be maintained unless a notice of the injury shall have been given within 30 days after the date thereof. Such notice shall include the time, place and cause, and the nature of the injury, together with the name and address of the person injured. It shall be given by the person injured or by a person in his behalf; or, in the event of his death, by his legal representatives, or by a dependent or by a person in behalf of either.

Such notice shall be given to the employer, or to one employer if there are more employers than one; or, if the employer is a corporation, to any official thereof; or to any employee designated by the employer as one to whom reports of accidents to employees should be made. It may be given to the general superintendent or to the foreman in charge of the particular work being done by the employee at the time of the injury.

visions of the Maine Workers' Compensation Act.

It is specifically found that Warren E. Malcolm and his wife, Nancy Malcolm, never gave notice within the provisions of the Act and that their testimony, while undoubtedly sincere, was not persuasive to this Commission because of the obvious inability of these witnesses to comprehend and understand what they were doing in connection with the various insurance claims filed with the Bath Iron Works.

On the contrary, while the employee of Bath Iron Works, Evelyn Desmond, an extremely well qualified person in her field, articulate, forthright, and considered by this Commission to be truthful and objective in her testimony; contradicted whatever weight could be given to the testimony of witnesses on the side of the petitioner.

It is found that she was telling the truth as it is and that, regrettable though it may be, that someone who has not all of the same capacity to understand and protect their rights when they have been allegedly injured, this Commission has to deal with the facts. It simply cannot deprive the employer or insurance carrier of its rights or its property from sympathy alone.

Wherefore, the petition is dismissed.

Malcolm testified before the commissioner that on September 3, 1974, "something snapped" in his back while he was operating a crane on the floor of BIW's plant. When asked whether he told anyone at work what happened, he answered, "It seems so I did, but I can't remember." Malcolm had suffered back problems in the past, which had been treated by his family doctor, Dr. Charles J. DiPari. His earlier problems had never been diagnosed as work-related, and he had never sought compensation for them.

On the day after the incident, Malcolm went to Dr. DiPari, who later sent him to a hospital in Portland. Malcolm attempted to return to work but after a few days was unable to continue. He was unsure of the exact date on which he stopped. He began receiving non-occupational group insurance payments from BIW on September 17, 1974. In his brief, he gives September 16, 1974 as the last day he worked.

The record contains a report from BIW, dated January 23, 1975, and signed by Dr. R. H. Dominici, the company physician, stating that Malcolm claimed injury at BIW's plant while pulling on a crane and also that he reported pre-existing back pain. The report is labeled "Diagnostic visit only" and "Non-occ". It also states that Malcolm first notified BIW of the injury on January 10, 1975.

Dr. Dominici had Malcolm examined by Dr. Richard Guistra on January 13, 1975, and again on March 21, 1975. Dr. Guistra concluded only that there was a possibility of a "herniated nucleus pulposus", or ruptured disc. He did not report that the condition was work-related. On March 27, Dr. Guistra reviewed Malcolm's myelogram and found it normal.

Malcolm admitted that from September, 1974, to January, 1975, he himself believed that his back trouble was caused by the incident on September 3. He testified that, at first, on the basis of past experience he had expected his back to stop hurting. He said neither doctor told him specifically what was wrong with his back.

Malcolm testified that he thought the non-occupational payments he began receiving on September 17, 1974, were workers' compensation. His testimony was corroborated by a report by a psychologist who examined him in April, 1977, at which time Malcolm told the psychologist he had received workers' compensation for his back.

When the payments ceased, Malcolm's wife called Mrs. Evelyn Desmond, whose name had been on company papers sent to Malcolm. At that time, Mrs. Desmond, an employee of BIW for thirty years, was in charge of non-occupational insurance claims for BIW. According to Mrs. Malcolm, when she asked Mrs. Desmond on the telephone in the spring of 1975 why Malcolm was not getting his checks, Mrs. Desmond told her "his money had run out" and "in order to get any more we'd have to take it to court".

After the phone call, Malcolm said he believed there was nothing else he could do. He did not file any petition until January 11, 1978, roughly two years and nine months later, and over three years after his asserted injury.

In November, 1977, at his attorney's request, Malcolm was examined by Dr. Victor Parisien. Dr. Parisien diagnosed a ruptured disc, caused by the incident at work on September 3, 1974.

At the hearings, Mrs. Desmond testified for BIW that BIW employees are given a booklet describing the non-occupational insurance plan. She also testified that she had recorded a call from someone at Malcolm's home on November 13, 1974, notifying her that Malcolm was in the hospital. She said she had no indication that his condition was job-related. If there had been such an indication it was her job to investigate before paying non-occupational benefits. Mrs. Desmond said she did not recall any conversation with Mrs. Malcolm after the payments expired. She said she would never tell anyone that they had to sue to get more money.

The commissioner rested his dismissal of the petition on the ground that timely notice of the injury was not given to BIW as required by 39 M.R.S.A. § 63. His decree contains no finding or conclusion bearing directly on Malcolm's principal contention on this appeal; namely, that Malcolm's delay in giving notice was excused because it was caused by "mistake of fact" within the meaning of 39 M.R.S.A. § 64, in that he believed erroneously he was getting workers' compensation from September 17, 1974, to April 6, 1975, when, in fact, he was receiving only group disability insurance payments. Malcolm cites for support 3 A. Larson, *The Law of Workmen's Compensation* § 78.43(a) (1976), discussing cases which hold that where an employer voluntarily makes compensation payments the period for filing a claim usually dates from the last payment—either by force of the language of the local workers' compensation statute or by application of a theory of waiver or estoppel. Malcolm's position also receives support from cases outside Maine that have implied a waiver of the notice requirement when (1) the notice period is running because an employee has the requisite knowledge of a possible work-related injury, and (2) the employer or its insurance carrier voluntarily furnishes during the notice period alternative medical or disability benefits to the employee who has in fact suffered an otherwise compensable injury. *E. g., Girlish v. Acme Precision Products, Inc.*, 404 Mich. 371, 273 N.W.2d 62 (1978). See Annots., 78 A.L.R. 1232, 1294, 1306 (1932); 144 A.L.R. 606 (1943). *Cf. Williams v. International Lubricant Corp.*, 341 So.2d 17 (La.App.1976) (employer unwittingly set up circumstances in which the employee could reasonably believe he was receiving compensation benefits; employer held estopped to assert statute of limitations for filing claim).

■ Sufficient evidence in the record supports the commissioner's finding that Malcolm did not give BIW notice of compensable injury within thirty days of the September 3 incident. Furthermore, Malcolm's own testimony that he thought the payments he began receiving on September 17, after he had quit work, were workers' compensation payments makes it clear enough that he recognized the September 3 incident as an "injury" giving rise to a possibly compensable claim. *See Pino v. Maplewood Packing Co.*, Me., 375 A.2d 534 (1977).

■ However, it is not clear from the commissioner's order that the commissioner had addressed the question whether failure to give timely notice might have been the result of a mistake on Malcolm's part as to the source of the payments he received from September 17, 1974, to April 6, 1975. The reference in the order to the relative credibility of the Malcolms and Mrs. Desmond seems to suggest that the commissioner had decided Malcolm was not really mistaken as to the source of the payments and that, absent a belief on Malcolm's part that he was already receiving workers' compensation, BIW should not be estopped to assert lack of timely notice as a defense. It is by no means clear that such an inference should be drawn from the language of the

order. However, it is not necessary for us to pass upon the adequacy of the findings with respect to notice under section 63 and the possibility of mistake of fact under section 64, because we conclude that the judgment must be affirmed on another ground; namely, that by waiting until January, 1978, to file his petition for compensation, Malcolm permitted the statute of limitations to run on his claim.

Even if we assume, solely for the purpose of argument, that Malcolm's failure to give timely notice should have been excused because he had been mistaken as to the source of the payments he received from September, 1974, to April, 1975, we are left with his long delay after the disability payments ceased, in presenting his petition for compensation. From his own testimony and other evidence in the record, it is apparent that Malcolm was aware of the connection between the incident of September 3 and the onset of acute pain in his back and legs that he suffered thereafter. In fact, it was his awareness of that connection that led him to believe, as he testified, that the payments he began receiving from BIW were workers' compensation benefits. Nothing in the evidence suggests any basis for an estoppel against BIW to assert the defense of the statute of limitations provided in section 95 of the workers' compensation law. As that section stood at the time of the commissioner's decision, it provided as follows:

Any employee's claim for compensation under this Act shall be barred unless an agreement or a petition as provided in section 94 shall be filed within 2 years after the date of the injury, or, if the employee is paid by the employer or the insurer, without the filing of any petition or agreement, within 2 years of any payment by such employer or insurer for benefits otherwise required by this Act. Any time during which the employee is unable by reason of physical or medical incapacity to file said petition shall not be included in the period aforesaid. If the employee fails to file said petition within said period because of mistake of fact as to the cause and nature of the injury, he may file said petition within a reasonable time. In case of the death of the employee, there shall be allowed for filing said petition one year after such death. No petition of any kind may be filed more than 10 years following the date of the latest payment made under this Act.

Bath Iron Works set up the statute of limitations in section 95 as a defense when Malcolm finally filed a petition for compensation in January, 1978. The commissioner made no findings bearing on the issue of its applicability, presumably because he had concluded that lack of due notice defeated the claim in any event.

Nothing in the evidence suggests that any of the exceptions set forth in section 95 could have application in this case. Malcolm's own testimony shows that he was not mentally or physically incapable of filing a petition before the statutory time expired. From his own testimony also it is clear that Malcolm knew "the cause and nature of the injury" in the pertinent sense that he believed the onset of severe unmanageable pain in his back and legs began with the incident at work on September 3, 1974.

Certainly after March, 1975, when he saw Dr. Guistra, and probably earlier, although Malcolm may not have had a theory about the etiology of his condition, he was not laboring under "mistake of fact as to the cause and nature of the injury" within the meaning of section 95. *Pino v. Maplewood Packing Co., supra.*

Even if we assume, again without deciding, that the two-year statute of limitations was in effect tolled while Malcolm was receiving non-occupational payments from BIW, those benefits terminated on April 6, 1975, when the Malcolms were advised, according to their own testimony, that there would be no more payments without their taking legal action. Malcolm could not have had any illusion at that point that BIW was going to pay him workers' compensation if he took no action. Bath Iron Works did nothing after April 6 that can be construed as lulling him into a false sense of security. In that respect, the case is plainly distinguishable from *Pino v. Maplewood Packing Co., supra.*

Bath Iron Works was not estopped from raising the statute of limitations because of anything Mrs. Desmond said to the Malcolms. Apart from the question of Mrs. Desmond's authority or apparent authority at the time to commit BIW to any position on a compensation claim, if Mrs. Malcolm's own testimony as to what Mrs. Desmond said to her is taken as true, Mrs. Desmond's statement did not amount to a pronouncement that the claim had no basis or that filing the claim would be futile. *See* 3 A. Larson, Workmen's Compensation, § 78.45 at 15–155 (1976 & 1979 Cum. Supp.). On the contrary, if she made the statement Mrs. Malcolm attributed to her, namely, that "to get any more we'd have to take it to court", the statement should have alerted the Malcolms to the necessity for taking some sort of formal action with respect to the claim.

Since the case does not fall within any of the exceptions provided in section 95 and since the evidence would not support any inference that BIW was estopped from asserting the defense of the statute of limitations, the decision of the commissioner must be affirmed on the ground that Malcolm's petition for compensation was filed too late.

The entry is:

Appeal denied.

Judgment affirmed.

It is ordered that the employer pay to the employee an allowance of $550 for their counsel fees plus their reasonable out-of-pocket expenses for this appeal.

All concurring.